### LLOYD W. BERG v. CITY OF MINNEAPOLIS AND OTHERS.

143 N. W. (2d) 200.

June 10, 1966—No. 39,972.

---

*Thornsjo, Smith & Johnson* and *Donald K. Smith,* for appellant.

*Keith M. Stidd,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for respondents.

MURPHY, JUSTICE.

This is an appeal from a judgment of the District Court of Hennepin County dismissing the complaint by which the plaintiff, a police officer of the city of Minneapolis, sought an order restraining the Minneapolis Police Department from suspending him from his position and a declaratory judgment determining that a certain Civil Service Commission rule and a certain police department regulation of the city are void as arbitrary, unreasonable, and in violation of both Federal and State Constitutions.

The background of the controversy with the applicable provisions of law are clearly stated in the following findings of fact made by the trial court:

"I.

"The City Charter of the City of Minneapolis, Chapter 19, Section 7, provides that the Civil Service Commission may make certain rules of employment in city service and specifically states that they '* * * may make reasonable rules and requirements in respect to age, residence, physical condition or otherwise * * *.'

"II.

"Pursuant to authority granted by the City Charter, the Civil Service Commission has adopted a rule, known as Rule 4.05 of the Civil Service Commission of the City of Minneapolis, which provides as follows:

" 'All employees of the City of Minneapolis must be residents of the City, except where a governing body by formal action establishes residence requirements for the employees under its jurisdiction and its action is approved by the commission; or, unless the work to be performed requires residence at a distance from the corporate limits of the City; or where in the judgment of the commission there is good and sufficient reason for waiving residence in specific cases.'

"III.

"That Section 1, Chapter II, of the Minneapolis Police Department Regulations provides as follows:

" 'VOTERS REGISTRATION AND RESIDENCE REQUIREMENT

" 'Applicants for Civil Service examinations to the Police Dept. and members of the Department must be registered voters and residents of Minneapolis. Members of the Department must continue to be a resident of the city of Minneapolis after appointment but this does not prevent a member from staying temporarily at a lake cottage, etc. for short periods of time. If there is any attempt at subterfuge in this respect, your position with the Police Department will be in jeopardy.'

"IV.

"That the plaintiff, Lloyd W. Berg, is a police officer employed by the City of Minneapolis, and has been in such employment since May 15th, 1944.

"V.

"That the plaintiff, Lloyd W. Berg, is a good, competent police officer, who has attained the rank of sergeant.

"VI.

"That since May 15th, 1944, the plaintiff, Lloyd W. Berg, has no demerits on his police record and has received two commendations.

"VII.

"That the plaintiff, Lloyd W. Berg, is an honorably discharged veteran of the United States Armed Forces.

"VIII.

"That the plaintiff, Lloyd W. Berg, presently and for some time has resided at an address known as 8301 Aldrich Avenue South in Bloomington, Minnesota.

"IX.

"That the plaintiff, Lloyd W. Berg, at all times knew and was cognizant of the residency rule adopted by the Civil Service Commission and the Police Department of the City of Minneapolis.

"X.

"That on November 11th, 1964, the said Lloyd W. Berg was suspended for a period of twenty days from his position as police sergeant of the Police Department without pay or compensation."

By amended findings, the trial court found the additional facts:

"That the plaintiff, Lloyd W. Berg, presently and for sometime has resided at 8301 Aldrich Avenue South in Bloomington, Minnesota, through circumstances that were to some extent beyond his control. This included the following:

"A.    The plaintiff's first marriage, which resulted in divorce, and the loss to his first wife of his Minneapolis place of abode.

"B.    His remarriage to his present wife, who had minor children by a prior marriage and who had a homestead located in Bloomington, Minnesota, where the new family was able to live within their economic circumstances."

The trial court correctly concluded that both the Civil Service Commission rule and the police department regulation were validly adopted and that although the plaintiff had served as a "good, competent police officer" it was within the power of the Minneapolis Police Department to suspend plaintiff from service as a police officer by reason of the fact that he had removed his residence to a place outside the limits of the city of Minneapolis and was no longer qualified for employment within the purview of Rule 4.05 of the Civil Service Commission.

It is the contention of the appellant that Rule 4.05 of the Civil Service Commission and § 1, c. 2, of the Minneapolis Police Department Regulations, requiring residence as a condition for continued employment, are unfair, unreasonable, arbitrary, and unconstitutional. In support of his claim, the appellant relies on the opinion of a former chief of the Minneapolis Police Department who states in an affidavit that the rules and regulations of the Civil Service Commission and the police department

were predicated on the concept that "police officers should live close enough to their headquarters and base of operations so that they may be able to respond readily to emergency calls"; but that since the construction of modern highway facilities proximity is no longer an important consideration and employees living in the suburbs are as conveniently available for service and calls to duty as are those living within the city limits. We gather from the record that the mayor of the city of Minneapolis is of the view that a broader employment policy should be adopted so that the city might recruit well-qualified applicants for the police force who might reside in the suburbs. It is apparent, however, that the Civil Service Commission of the city of Minneapolis does not share these views since they have failed, or refused, to repeal or amend the rule.

Appellant relies on Construction & General Laborers Union v. City of St. Paul, 270 Minn. 427, 134 N. W. (2d) 26. In that case, where certain members of the union brought an action against the city of St. Paul for a declaratory judgment, we held that a city ordinance compelling all contractors performing work for the city of St. Paul to employ only Ramsey County residents was unconstitutional and void. Since that recent case gathers and discusses practically all of the important decisions dealing with the authority of a city to enact ordinances regulating the subject of employment and the carrying on of business by nonresidents, it is unnecessary to again review them here. It is sufficient only to point out that that case may be distinguished. It did not involve government employment but dealt with the subject of people engaged in construction and general labor for contractors doing work on a city project. Such work does not involve public service of a kind which is considered permanent, is not integral to the welfare of the community nor a public service relied upon by citizens of the community in their everyday life. It does not disturb the well-established rule that public employment is not a right but a privilege, and the legislature may give the municipality the authority to impose reasonable restrictions upon the activities of employees of the municipality as a part of their terms of employment. 3 McQuillin, Municipal Corporations (3 ed.) § 12.59; 2 Yokley, Municipal Corporations, § 343. There are numerous authorities to the effect that a municipal ordinance may provide that nonresidents must establish their residence in

the municipality during their period of employment, usually under penalty of forfeiting their position if they fail to do so. Matter of Ballard v. Rice, 167 Misc. 826, 4 N. Y. S. (2d) 806, affirmed, 254 App. Div. 733, 6 N. Y. S. (2d) 92; Marabuto v. Town of Emeryville, 183 Cal. App. (2d) 406, 6 Cal. Rptr. 690; Surry v. City of Seattle, 14 Wash. (2d) 350, 128 P. (2d) 322; Kaplan, The Law of Civil Service, p. 49. In State, County & Municipal Employees Local v. City of Highland Park, 363 Mich. 79, 108 N. W. (2d) 898, a contrary result was reached under circumstances where the lack of availability of housing facilities required that an exception be made to the rule. In that case, 163 city employees resided outside the corporate limits of a municipality completely surrounded by other municipalities. The record contains no facts which would warrant a similar exception in this case.

We think that the most persuasive authority, and the one which we follow, is Kennedy v. City of Newark, 29 N. J. 178, 148 A. (2d) 473, where city employees challenged the constitutionality of an ordinance limiting Civil Service Commission selections to city residents. To the argument of unconstitutionality the court answered (29 N. J. 183, 148 A. [2d] 476):

"The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government. [Citation omitted.] If there is a rational basis for a residence requirement in furtherance of the public welfare, the constitutional issue must be resolved in favor of the legislative power to ordain it."

The court indicated that in addition to emergency-call readiness the municipality could require residence for the purpose of enhancing performance by way of interest incentive (29 N. J. 184, 148 A. [2d] 476):

"* * * Government may well conclude that residence will supply a stake or incentive for better performance in office or employment and as well advance the economy of the locality which yields the tax revenues."

Directing its attention to the argument that the ordinance establishing residence requirements was an unconstitutional exercise of delegated power, the court said (29 N. J. 184, 148 A. [2d] 476):

"* * * That delegated power may not be exercised unreasonably is a settled rule. [Citations omitted.]

"* * * That the housing situation is tight seems clear. But absent is any proof that employees generally were driven from the city by insuperable difficulty or that a competent staff could not be recruited from residents. We cannot lightly assume that the city was so barren of living facilities that it was arbitrary to act as it did. The problems of some of a large body of public servants may well invite the thoughtful consideration of the city government in the light of other pertinent factors, but they are insufficient to support a judicial determination of unreasonableness. The power and responsibility are vested in another agency of government. The judiciary cannot exercise that power directly nor indirectly by measuring the policy determination by a judge's private view. [Citation omitted.] The court can intervene only when unreasonableness is clearly established. Plaintiffs have not met that burden."

From the record in this case it appears that the plaintiff was aware of the existence of the rule requiring residence in the city of Minneapolis as a condition of his continued employment. In essence he contends that an exception should be made because it would be more convenient and economical for him to reside in the home of his present wife in the suburb of Bloomington.

No serious argument has been made that the city does not have the right to impose the condition of employment expressed in the rule. The fact that it is the respected opinion of well-informed and responsible Minneapolis residents or city officials that the rule is not a good one is not sufficient to warrant a holding to the effect that it is unconstitutional. As the trial court observed in his memorandum:

"The proposition has long been established that 'Courts should let administrative boards * * * work out their problems with as little judicial interference as possible. * * * Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' *Marabuto, et al., v. Town of Emeryville*, 6 Cal. Rep. 690.

"While the Court felt its decision must be controlled by these legal precedents, the issue of whether the present residency rule is 'good' or 'desirable' for the City of Minneapolis is a very grave question."

284

We agree that it is not for the courts to inquire into the expediency or wisdom of legislative action. Courts are solely concerned with the existence of the power. Appeals as to the wisdom or policy of such actions must be addressed to the legislative body itself. G. N. Ry. Co. v. United States (D. Minn.) 172 F. Supp. 705, vacated, 362 U. S. 939, 80 S. Ct. 804, 4 L. ed. (2d) 768; G. N. Ry. Co. v. United States (D. Minn.) 209 F. Supp. 234; State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 39 N. W. (2d) 752; State ex rel. Anoka County Airport Protest Committee v. M. A. C. 248 Minn. 134, 78 N. W. (2d) 722; Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67; Dept. of Employment Security v. Minnesota Drug Products, Inc. 258 Minn. 133, 104 N. W. (2d) 640; Vicker v. Starkey, 265 Minn. 464, 122 N. W. (2d) 169, 97 A. L. R. (2d) 745.

The other points raised by the appellant are not of sufficient merit to require discussion.

Affirmed.