[No. 46330. En Banc. May 8, 1980.]

EQUITABLE SHIPYARDS, INC., *Appellant,* v. THE STATE
OF WASHINGTON, *Respondent,* MARINE POWER
& EQUIPMENT CO., *Intervenor.*

466

*Graham & Dunn,* by *Charles S. Mullen, Gerald T. Parks, Jr.,* and *Jan Essenburg* and *Bean, Gentry & Rathbone,* by *Steven J. Bean,* for appellant.

*Slade Gorton, Attorney General, Thomas R. Garlington, Senior Assistant,* and *William G. Boland, Assistant,* for respondent.

*Aiken, St. Louis & Siljeg,* by *Wallace Aiken* and *Gregory L. Bertram,* for intervenor.

HICKS, J.—Equitable Shipyards, Inc., of New Orleans (Equitable), complains that the State Transportation Commission (Commission), the directing entity of the Department of Transportation (Department), acted arbitrarily and capriciously in awarding a ferry construction contract to Marine Power & Equipment Co., of Seattle (MP&E). Additionally, Equitable challenges: (1) the constitutionality of a statute limiting review of the Commission's administrative decision; (2) the constitutionality of a bidding preference statute; and (3) the construction of that statute. *See* RCW 47.60.650–.670. The trial court rejected Equitable's challenges and the case is here upon certification from Division Two of the Court of Appeals. Equitable requests this court to direct that it be awarded the contract; remand to the trial court for further proceedings; or remand to the Commission for further proceedings. We affirm the trial court.

In the course of this opinion, for convenience and when appropriate, the Commission and the Department will be collectively referred to as the "State".

In 1977, the legislature authorized construction of additional ferries through an award of a construction contract to a shipbuilder. Laws of 1977, 1st Ex. Sess., ch. 166, p. 610; RCW 47.60.650.[1] The shipbuilder was to be selected through a competitive design–bidding procedure. Any firm

---

[1]The powers and duties of the toll bridge authority and highway department were transferred to the Department of Transportation. RCW 47.01.031.

desiring to compete for the contract was required to pre-qualify as prescribed in RCW 47.60.660 before a bid or proposal would be considered. August 1977, the Department issued notice of intent to request proposals for design and construction of ferry vessels. By November 1977, seven shipyards had prequalified, including MP&E and Equitable.

Under RCW 47.60.650(4), a request for proposals (RFP) for construction of six ferry vessels was issued to prequalified firms. The RFP required complete vessel design specifications to be furnished and that the ferries be delivered in 6–month intervals from November 30, 1979, to May 30, 1982. Basic requirements that the ferries must meet to be considered were set forth in the RFP.

Those responding to the RFP were authorized to submit a base proposal and two alternates. The RFP included copies of the forms the Commission would use in evaluating proposals.

On or about December 30, 1977, Equitable and MP&E each submitted three proposals. Under RCW 47.60.650(9), all proposals constitute an offer and remain open for 90 days after submission. RCW 47.60.650(5) provides for evaluation of proposals:

> The [Commission] shall evaluate all timely proposals . . . for compliance with the requirements specified in the request for proposal, and, in addition, shall estimate the operation and maintenance costs of each firm's vessel design . . .

After evaluation, the Commission was to select the firm presenting the proposals "most advantageous" to the state, taking into consideration the RFP requirements and the in–state preference provided in RCW 47.60.670. RCW 47.60.650(6). RCW 47.60.670 establishes a "preference" for shipbuilding firms located in Washington, "providing such bid or proposed price does not exceed by more than six percent the lowest price proposal for a negotiated contract

or the lowest comparable bid of any shipbuilding firm located outside the state of Washington."

The Department retained a naval architect to assist in evaluating the proposals. Evaluation meetings were held with each shipbuilder on January 25, 1978. The naval architect estimated the life cycle costs of each proposal and issued a report dated January 30, 1978. Based on this evaluation, recommended ranking of six proposals was:

(1) MP&E Alternate A
(2) Equitable Alternate A
(3) MP&E Alternate B
(4) Equitable Alternate B
(5) MP&E Base proposal
(6) Equitable Base proposal (not in compliance with RFP)

The rankings incorporated the 6 percent out–of–state "penalty" preference.

The report and recommendation were submitted to the Commission at an "adjourned regular meeting" on February 3, 1978. The Commission was responsible for evaluating and selecting the proposal most advantageous to the state. RCW 47.60.650(6)(a). By February 3 all proposals satisfied the RFP, except the Equitable base proposal which ·was subsequently brought into compliance on February 17.

The commissioners heard from the naval architect and representatives from both shipyards. Both firms were then permitted to submit additional information and provide their own evaluation of the proposals. Equitable introduced a memorandum objecting to the application of the 6 percent in–state preference. It also made repeated requests to review the plans and specifications of MP&E. The requests were denied.

Based on the additional information and the shipyard's evaluations, the naval architect reevaluated the proposals in a report dated February 17, 1978. The proposals were ranked as follows:

| Proposal | Single Vessel Price** | Single Vessel Life Cycle Cost** |
|---|---|---|
| MP&E—A | $17,604,000 | $32,011,000 |
| MP&E—B | 17,237,000 | 32,162,000 |
| Equitable—A | 17,308,000 | 32,296,000* |
| Equitable—Base | 17,490,000 | 32,660,000* |
| Equitable—B | 17,316,000 | 32,750,000* |
| MP&E—Base | 17,883,000 | 33,013,000 |

*incorporates 6 percent out–of–state "penalty".
**rounded to the nearest $1,000.

The Commission resumed its public meeting on February 20, 1978, hearing additional testimony from both shipyards. February 21, the Commission selected MP&E alternate A as the proposal most advantageous to the state, ranking the remaining proposals in the order recommended in the naval architect's report of February 17.

February 27, 1978, Equitable filed notice of appeal[2] in Thurston County Superior Court under RCW 47.60-.650(6)(b), which provides in part:

The [Commission's] decision shall be conclusive unless appeal therefrom shall be taken by an aggrieved firm to the superior court of Thurston county within five days after receiving notice of the [Commission's] final decision. The appeal shall be heard summarily within ten days after the same is taken and on five days notice

---

[2]According to Equitable's notice of appeal in Thurston County Superior Court, it filed a declaratory judgment action in the Western District of Washington on February 24, 1978. Equitable Shipyards, Inc. v. Bulley, No. C78–128. Equitable noted this contemporaneous federal proceeding and expressly reserved "the right to have all its constitutional claims and its claims arising under Federal statutes . . . heard and adjudicated" in federal court. The claims were enumerated as follows: (1) violation of the commerce clause (U.S. Const. art. 1, § 8); (2) deprivation of due process (Fourteenth Amendment); (3) deprivation of equal protection (Fourteenth Amendment); (4) abridgment of privileges and immunities; (5) violation of Equitable's civil rights; (6) granting of special privileges and immunities not belonging equally to all citizens and corporations; (7) creating special law granting corporate powers and privileges. Although the record on appeal contains no copy of the federal complaint, apparently that action alleges state as well as federal constitutional infractions. The federal case is pending.

thereof to the [Commission]. The court shall hear any such appeal on the administrative record which was before the [Commission]. The court may affirm the decision of the [Commission] or it may reverse the decision if it determines the action of the [Commission] is arbitrary or capricious.

By consent of all parties, MP&E intervened in the proceedings. In its original notice of appeal, Equitable alleged that the Commission acted arbitrarily and capriciously by: (1) incorrectly applying the 6 percent preference; (2) violating the Open Public Meetings Act; and (3) violating the public records act.

March 3, 1978, in the trial court hearing, it was agreed the State would not enter into a contract with MP&E until motions had been heard. At a March 10 hearing, Equitable moved to obtain: (1) plans and specifications of MP&E; (2) prequalification files; and (3) all matters and documents considered by the commissioners.

The plans submitted by both shipyards had previously been placed in escrow. The State and MP&E resisted disclosure, asserting a protected proprietary interest. The trial court ruled that the plans and specifications were part of the record and permitted inspection under court supervision.

Regarding the prequalification files, the trial court ruled that the issue of prequalification was not presently reviewable. Under the prequalification process of RCW 47.60.660, Equitable, MP&E, and five other firms had been deemed prequalified. The trial court noted that the firms were entitled to rely on that determination and to proceed with preparation of proposals.[3]

Equitable asserted that the financial ability of MP&E (a prequalification criterion) became an issue at the Commission hearing, thus the file which evaluated such matters was

---

[3]RCW 47.60.660 provides an independent appeal process by which an "aggrieved party" may obtain review of prequalification. We need not determine whether Equitable had the right to challenge the prequalification of another "bidder" under this statute.

relevant. The trial court ruled that financial data filed subsequent to the prequalification determination would be reviewed in camera; however, prequalification was not at issue. Subsequently, on March 21, the court permitted Equitable to examine MP&E's prequalification file.

Equitable's "catchall" request for "all matters and documents" was rejected at the March 10 hearing as too general. Although there was a general consensus between the court and the parties that the allotted time for trial preparation might prove inadequate, the court, noting the provision in RCW 47.60.650(6)(b) that "[t]he appeal shall be heard summarily within ten days," set trial for March 23 (subsequently continued to March 27). Equitable's motion to present expert testimony to interpret or supplement the administrative record was denied.

The trial court refused to entertain the constitutional challenge because RCW 47.60.650(6)(b) limited the scope of review to a determination of whether the action was arbitrary or capricious. The court noted, however, that the constitutional issue could be raised in a declaratory judgment action. March 27 the trial began. On that date, the issue of arbitrariness and capriciousness was argued. The statutory interpretation issue regarding proper application of the 6 percent preference was heard the following day, March 28.

March 30, the trial court entered the following conclusions of law: (1) the court lacked the power and capacity to hear and determine constitutional questions regarding the application of the statute in the instant proceeding because the court's jurisdiction was predicated solely on RCW 47.60.650(6)(b); (2) the court lacked power in this proceeding to determine if the State violated the Open Public Meetings Act of 1971, RCW 42.30; (3) under RCW 47.60, the court could not receive expert testimony to introduce facts outside the administrative record or to explain the record; (4) Equitable was not denied due process by being compelled to go to trial on March 27; (5) the State properly construed and applied the 6 percent preference statute; and

(6) based on the administrative record, the selection of MP&E was not arbitrary or capricious.

■ The primary purpose of public bidding is to benefit the taxpayers by procuring the best work or material at the lowest price practicable. *Savage v. State,* 75 Wn.2d 618, 621, 453 P.2d 613 (1969). A secondary purpose of competitive bidding is to provide bidders with a fair forum for the award of public contracts. *Gostovich v. West Richland,* 75 Wn.2d 583, 587, 452 P.2d 737 (1969). *See generally* Comment, *Competitive Bidding—Public Construction Contracts in the State of Washington,* 39 Wash. L. Rev. 796 (1964).

The ferry procurement act, RCW 47.60.650–.670, contemplates a negotiated contract with selection of the contractor based upon competitive design proposals. The act has several distinctive characteristics: (1) provisions for prequalification;[4] (2) solicitation of competitive design proposals; (3) contract award to proposal "most advantageous to state";[5] (4) inclusion of three evaluation factors: vessel price, life cycle costs, in–state preference; and (5) expedited judicial review from award provided.

In a negotiated procurement procedure, evaluation of proposals is more complex than simply to rank bids. After discussion, proposals may be modified, as in the instant

---

[4]Five requirements were set forth for prequalification: adequate financial resources; necessary experience, organization and technical qualifications; ability to comply with required performance schedule; satisfactory record of performance, integrity, judgment, and skills; and otherwise qualified and eligible to construct under applicable laws and regulations. RCW 47.60.660.

[5]Other public bidding statutes authorize awarding contracts to the "lowest responsible bidder." *See, e.g.,* RCW 52.12.110 (fire protection district); RCW 56.08.070 (sewer district); RCW 43.19.1911 (state division of purchasing); RCW 35.23.352, 35.22.620 (cities and towns). When bidding is tendered on plans and specifications submitted by the bidders, statutes permit an award to the "best bidder submitting his own plans and specifications." *See, e.g.,* RCW 53.08.130 (port district); RCW 54.04.080 (public utility district); RCW 57.08.050 (water district); RCW 70.44.140 (public hospital district). *See also* RCW 86.09.178 ("lowest and best responsible bidder").

case. Factors other than bid price may be used in selection, *e.g.,* life cycle costs.

Equitable's most strenuous objections seem directed to the constitutionality and application of RCW 47.60.670, the preference statute. Before reaching the constitutional issue, however, we examine the trial court's determination that it had no jurisdiction to hear the constitutional claims in this statutory review proceeding.

We begin by noting RCW 47.60.650(6)(b) provides that upon appeal from the award of the ferry contract, the court "may affirm the decision of the [Commission] or it may reverse the decision if it determines the action of the [Commission] is arbitrary or capricious." Equitable argues: (1) the arbitrary or capricious standard includes constitutional review; and (2) the arbitrary or capricious standard cannot derogate the power of the court to decide constitutional issues. We disagree as to (1) and agree as to (2).

Even so, in this case, general rules regarding appeals are qualified by legislative concern for prompt resolution. *See, e.g.,* RCW 47.60.650(6)(b) (appeals shall be heard "summarily" within 10 days). In this instance, the necessity for prompt determination cannot be gainsaid in light of the limited life (90 days) of the submitted offers, escalating costs, and the urgency of the state's ferry needs.

■■ Arbitrary and capricious action has been consistently defined by this court as "willful and unreasoning action, without consideration and in disregard of facts or circumstances." *DuPont–Fort Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971). The arbitrary or capricious standard has been applied to challenges to bidding procedures even though there is no statutory provision affording review. *See, e.g., Butler v. Federal Way School Dist. 210,* 17 Wn. App. 288, 562 P.2d 271 (1977); *see also Savage v. State, supra* (reviewed for abuse of discretion).

When applying the "arbitrary and capricious" standard of review, a reviewing court does not substitute its judgment for that of the agency. *Deaconess Hosp. v. State*

*Highway Comm'n,* 66 Wn.2d 378, 403 P.2d 54 (1965). Where there is room for two opinions, action is not arbitrary or capricious if exercised honestly and upon due consideration even if the reviewing court believes an erroneous conclusion was reached. *DuPont–Fort Lewis School Dist. 7 v. Bruno, supra.* When contracts are to be awarded on terms "most advantageous to" or "in the best interest of" the state, as in this case, the discretion in making the award may be even somewhat broader. *See* 64 Am. Jur. 2d *Public Works and Contracts* § 68 (1972). It does not seem to us that a constitutional infirmity fits readily within our concept of arbitrary or capricious.

Further, in RCW 34.04.130(6), a section of the administrative procedures act, the legislature set forth the grounds for challenging agency decisions. Arbitrary or capricious and constitutional violation were listed as distinct and separate bases upon which to contest an agency ruling. We are reluctant, therefore, to infer a legislative intent to embrace constitutional challenges under the rubric of arbitrary or capricious where the legislature has indicated otherwise. *See, e.g., Butler v. Federal Way School Dist. 210, supra.* Nevertheless, we do not believe that in this case the legislature impermissibly precluded judicial review of constitutional questions.

We agree with the trial court's appraisal that the act does not divest courts of jurisdiction to hear constitutional challenges. The declaratory judgment act, RCW 7.24, was available for assertion of such claims. Equitable was aware of the preference provision no later than its reception of the RFP. As a prequalified firm against whom the preference would operate, presumably it could have initiated a declaratory action at least as early as December 30, 1977, when it submitted its proposals.

Nonetheless, knowing the rules, Equitable chose to submit a proposal under those rules and await a determination. When it was not selected, Equitable then filed a declaratory judgment action in federal district court challenging the preference on state and federal constitutional grounds.

In its original notice of appeal to Thurston County Superior Court 3 days later, however, Equitable failed to raise any constitutional issues. Nevertheless, as the constitutional issues were extensively briefed and argued before this court, and in view of the significance of the question, we will consider the preference complaint.

## CONSTITUTIONALITY OF PREFERENCE STATUTE

Although its amended notice of appeal in the Superior Court referred solely to state constitutional provisions, Equitable now asserts an equal protection claim under the Fourteenth Amendment. We have held the federal equal protection clause and the state privileges and immunities clause (Const. art. 1, § 12) are substantially identical. *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956). While the State objects to considering the equal protection claim as not raised by Equitable in the trial court, we believe the issue should be addressed.

In other contexts, the United States Supreme Court has stated that government, like private individuals and businesses, "enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 127, 84 L. Ed. 1108, 60 S. Ct. 869 (1940). *See also Heim v. McCall,* 239 U.S. 175, 191, 60 L. Ed. 206, 36 S. Ct. 78 (1915).

The State asserts that equal protection guaranties are not applicable when the state acts in its proprietary capacity as a purchaser of goods. Relying on *Heim,* other state courts have upheld statutory in–state purchasing preferences against both equal protection and commerce clause challenges. *See, e.g., City and County of Denver v. Bossie,* 83 Colo. 329, 266 P. 214 (1928) ("the state may buy of whom it will"); *State ex rel. Collins v. Senatobia Blank Book & Stationery Co.,* 115 Miss. 254, 76 So. 258 (1917) (rejecting equal protection challenge to a statute prohibiting state contracting with nonresident bidders).

While the vitality of the proprietary rationale is questioned from time to time, its use continues. *See Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 49 L. Ed. 2d 220, 96 S. Ct. 2488 (1976) (invokes proprietary rationale to forego traditional commerce clause analysis). In 1972, the Supreme Court summarily affirmed a lower federal court ruling which (1) distinguished state purchases in its proprietary capacity from other state functions, and (2) upheld a statute requiring in–state government printing against commerce clause and equal protection challenges. *American Yearbook Co. v. Askew,* 339 F. Supp. 719 (M.D. Fla.), *aff'd,* 409 U.S. 904, 34 L. Ed. 2d 168, 93 S. Ct. 230 (1972). The district court in *American Yearbook Co.* recognized the authority of states to prescribe conditions under which work of a public character will be performed. *See also Phoenix v. Superior Court,* 109 Ariz. 533, 514 P.2d 454 (1973).

In this case, we need not go so far as to hold that because a contract is public and requires expenditure of public funds the legislature may, without reasonable basis, grant a preference. Here, as later discussed, a reasonable basis exists for the preference sufficient to withstand constitutional attack.

Equitable next attempts, relying on its out–of–state incorporation, to characterize itself as an alien. It uses this premise to assert that the preference statute's classification of in–state and out–of–state shipbuilding firms is based upon a suspect class, *i.e.,* alienage. Therefore, the argument goes, the statute must be subjected to the rigors of strict scrutiny.

It is true, strict scrutiny is appropriate when a classification is based on a suspect category or infringes upon a fundamental right. *Nielsen v. State Bar Ass'n,* 90 Wn.2d 818, 585 P.2d 1191 (1978); *see generally* L. Tribe, *American Constitutional Law* § 16–22 (1978). It is also true, Equitable may be designated a "foreign corporation". Equitable, however, is not an "alien" for purposes of equal protection analysis. In the context of suspect categories, alienage refers

to non–United States citizenship. *Graham v. Richardson,* 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971). Further, nonresidency and out–of–state citizenship have not been deemed suspect classifications for equal protection purposes. *See generally* L. Tribe, *supra,* § 6–33, at 411.

■ We conclude the preference statute is most closely allied with economic legislation requiring only rational basis scrutiny. *See Lynden Transp., Inc. v. State,* 532 P.2d 700 (Alaska 1975). The rational basis inquiry involves a 3–part test: (1) Does the classification apply alike to all members within the designated class? (2) Does some basis in reality exist for reasonably distinguishing between those within and without the designated class? (3) Does the classification have a rational relation to the purpose of the challenged statute? *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 601 P.2d 936 (1979). There is a strong presumption of constitutionality in economic acts of the legislature and the burden of refutation is on the challenger. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974).

■ In considering whether the classification passes constitutional muster, we consider the purposes of the challenged statute. The plain object of the act is the procurement of ferries. It provides a procedure whereby public funds shall be expended for a public purpose. The primary interest is that of the public. An identifiable underlying policy is that of granting a preference to those who contribute to the economy through construction activities within the state. RCW 47.60.670, as we interpret it, grants a preference for constructing vessels within the state.

Ferry construction activities are exempt from state sales tax and use tax. Laws of 1977, 1st Ex. Sess., ch. 166, §§ 6, 7, p. 616, 620, amending RCW 82.08.030 and 82.12.030. Lost revenues from the tax exemption are partially offset *if* the

shipbuilding activities occur within the state thereby generating secondary economic activity. The lower price preference partially compensates for the revenue loss if the vessels are constructed elsewhere. Finally, construction of ferries within the state strengthens state and local economies. Out–of–state construction results in increased inspection costs and greater potential for delay.

We are convinced that a rational relation exists between the purposes of RCW 47.60.670 and its classifications of in-state and out–of–state shipbuilding firms. *See Schrey v. Allison Steel Mfg. Co.,* 75 Ariz. 282, 255 P.2d 604 (1953); *cf. Lynden Transp., Inc. v. State, supra* (strikes down classification granting privilege to resident corporation with principal office and majority of shareholders in state). We find no violation of equal protection guaranties.

Equitable also asserts that RCW 47.60.670 is further constitutionally infirm in that it represents a "special" law "granting corporate powers or privileges" in violation of Const. art. 2, § 28(6). Under this constitutional prohibition, a special law is one which arbitrarily separates some person, place or thing from those upon which it would otherwise operate. The focus is upon what the law excludes. *YMCA v. Parish,* 89 Wash. 495, 154 P. 785 (1916). If nothing is excluded that should be included, the law is a general enactment. When the only limitation is a legitimate classification of the law's objects, it is a general law. *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, supra.* As stated above, in our view, the preference classification is valid. Further, the preference statute relates to particular bidders *as a class* and not particular bidders *of a class.* Assuming Equitable has adequately raised and presented this assignment of error, RCW 47.60.670 does not separate out a particular person or entity for special treatment and does not fall within the proscription of the cited constitutional provision.

## PUBLIC RECORDS

The certified administrative record contains 77 items of evidence considered by the Commission in its award of the contract. Of those items, Equitable asserts that the Commission's refusal to disclose MP&E's plans and specifications violated the public records provisions in RCW 42.17.250–.340, and was therefore arbitrary and capricious. Under the circumstances of this case (a design/bid competition), we disagree that the Commission's refusal to disclose the plans and specifications of one competitor to another was arbitrary or capricious.

In any event, January 11, 1978, the plans and specifications of both contending firms were placed in escrow. After filing of the appeal, the trial court ordered that the plans be made available for inspection by representatives of both shipyards. This order was later modified to permit unrestricted use of the plans. Thus, Equitable had access to the plans and specifications under the court order and it took full advantage of that access.

Equitable makes no allegation that the Commission failed to give identical information to both competitors. It demonstrates no prejudice from the Commission's refusal to allow it to review the plans and specifications earlier. The only authority it cites for the proposition that a public agency seeking competitive design bids has a duty to reveal the plans of one competitor to another is RCW 42.17.270 (general provision authorizing inspection and copying of public records).

In light of the foregoing, we deem it unnecessary to construe the limits of RCW 42.17.270 in this instance. Suffice it to say, we do not find that the Commission's actions were either arbitrary or capricious at the time.

## PREQUALIFICATION FILES

Equitable argues that the Commission acted arbitrarily in considering prequalification files and the trial court erred in refusing to review the prequalification issue. To the extent certain commissioners may have intimated some

question concerning a prequalification criterion (financial responsibility), this did not deflect the focus of the meetings. Even assuming that Equitable should have been granted access to the prequalification file earlier, we fail to see where prejudice resulted. The concern about financial responsibility involved MP&E, not Equitable. Further, after examination was permitted, Equitable has yet to identify any portion of the file as objectionable or inaccurate. Again, the Commission's action was not arbitrary or capricious.

### EXPEDITED HEARING

Equitable also asserts that the provision for a hearing on appeal within 10 days violates due process and separation of powers doctrines. RCW 47.60.650(6)(b). Inability to adequately prepare for the hearing is the gravamen of Equitable's complaint. The trial court avoided an interpretation which might have been found to be an unconstitutional usurpation of judicial power. The court construed the statute as directory, not mandatory. The trial ultimately was held 1 month after the appeal was filed, not 10 days as the statute provided. Thus, we find no violation of separation of powers.

Under the circumstances, we also find no violation of due process when the trial court denied Equitable's motion for continuance. One case is cited for the alleged violation, *In re Petrie*, 40 Wn.2d 809, 246 P.2d 465 (1952). It was there held, in a proceeding to deprive a mother of parental rights that service of a summons at 2 p.m. on a legal holiday returnable the following day at 10 a.m. was insufficient time and constituted denial of due process. Equitable asserts it is in the same position as *Petrie* and since it "was not afforded a meaningful opportunity to prepare, it was denied due process of law."

The hearing date selected in this instance reflected a conscientious effort by the trial court to afford Equitable a reasonable time to prepare, to allow the court to hear and decide the matter and still give some efficacy to RCW

47.60.650(4)(i) (90–day limitation on proposals). Under the circumstances, we are unable to conclude that the early hearing provision is invalid under the due process clause, particularly where, as here, Equitable was previously afforded an opportunity to be heard at an open public meeting and its appeal was heard approximately 1 month after it was filed. *Cf. Lindsey v. Normet,* 405 U.S. 56, 31 L. Ed. 2d 36, 92 S. Ct. 862 (1972). A prompt and expeditious resolution of the matter was in the best interest of *all* parties.

### OPEN PUBLIC MEETINGS ACT

■ We recognize the statutory statement of purpose in RCW 42.30.010, the Open Public Meetings Act of 1971 (OPMA), employs some of the strongest language used in any legislation. *See Cathcart v. Andersen,* 85 Wn.2d 102, 530 P.2d 313 (1975). The trial court concluded that within the scope of this statutory appeal it lacked jurisdiction to determine whether the Commission violated the OPMA. RCW 42.30. Regardless of the correctness of the trial court's view of its jurisdiction, Equitable has neither alleged, argued nor demonstrated that: (1) it was denied the right to be present at the adjourned regular meetings of the Commission; (2) it was denied the right to be heard during deliberations; (3) a "secret" Commission meeting was held; or (4) the Commission met impermissibly in executive session. Equitable does make some contention that the denial of access to MP&E's plans and specifications converted the meetings into violations of the act because certain members of the Commission independently and individually examined the documents. We do not find such independent examination, assuming it occurred, to be violative of this act. Independent separate examination of the documents constituted neither an "action" nor a "meeting" under the act. *See* RCW 42.30.020(3) and (4). The Commission took its "action" in an open public meeting following presentations by both firms, experts and the public.

APPLICATION OF PREFERENCE STATUTE

Equitable's final assignment of error relates not to the constitutionality of the preference statute as discussed earlier, but to its application. The trial court rejected Equitable's interpretation, and we affirm. At issue are (1) the evaluation and selection process set forth in RCW 47.60.650(5) and (6); and (2) the application of the 6 percent preference under RCW 47.60.670.

Conflicting interpretation results, depending upon which statute is focused upon. Equitable construes RCW 47.60.670, a single sentence statute, as a mandatory directive to award the construction contract to an in–state shipyard unless the out–of–state competitor's bid plus preference penalty is less than the bid of the in–state firm. It is Equitable's contention that the contract award is to be determined solely by comparing the vessel price of the best in–state proposal with the vessel price of the out–of–state proposal as enhanced by the 6 percent preference penalty. Equitable asserts that life cycle cost evaluation is to be used only in selecting the most advantageous in–state proposal for the final comparison with the out–of–state proposal. Accordingly, Equitable argues life cycle costs are of no concern to it as an out–of–state firm, and such costs are not to be considered in making a selection between in–state and out–of–state competitors.

The State, on the other hand, construes RCW 47.60.650(6) to be the contract "award" statute. Under that construction, the bid, life cycle costs and 6 percent preference impact for *each* proposal are aggregated to determine the proposal most advantageous to the State. RCW 47.60.650(6) refers to the preference statute only to obtain the "measure" (6 percent) of the preference. Parenthetically, we note that the State's construction was known to Equitable from the beginning, as it was set forth in the RFP.

■■ It is our function to effectuate the objective or intent of the legislature. *Amburn v. Daly,* 81 Wn.2d 241, 245, 501 P.2d 178 (1972). Equitable's interpretation limits consideration of life cycle costs to selecting the most

484

advantageous in–state proposal. To so read the statute is to disregard the general language of RCW 47.60.650, which does not differentiate between in–state and out–of–state proposals for purposes of evaluation based upon price preference and *life cycle costs*. Since this section may not be rendered superfluous (*Taylor v. Redmond*, 89 Wn.2d 315, 571 P.2d 1388 (1977)), when it is read and given effect with RCW 47.60.670, we find the State's method of evaluating the proposal and awarding the contract to be correct.

Affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.