[No. 4171-9-III. Division Three. January 19, 1982.]

MITCHELL C. MEYERS, *Appellant,* v. NEWPORT CONSOLIDATED JOINT SCHOOL DISTRICT No. 56-415, ET AL, *Respondents.*

*Bryan P. Harnetiaux, Sheila Malloy Huber,* and *Powell & Harnetiaux,* for appellant.

*Robert W. Winston, Jr., Charles M. Andersen,* and *Winston & Cashatt,* for respondents.

*Judith A. Lonnquist* on behalf of Washington Education Association, amicus curiae.

McINTURFF, C.J.—Mitchell C. Meyers appeals the summary dismissal of his declaratory judgment which granted nonrenewal of his teaching contract with the Newport Consolidated Joint School District No. 56–415 (District) for violating a teachers' residency policy.

Mr. Meyers was hired as a provisional certificated school teacher for the 1978–79 school year. During his employment interview in the summer of 1978 he was informed that a condition of employment was residence within the boundaries of the District.[1] This was apparently agreeable to Mr. Meyers since he moved into a residence 2 to 3 miles from the school where he would be teaching.

Later that fall, Mr. Meyers learned his residence was not only outside the perimeter of the District, but also in the state of Idaho. In October 1978, Darrell Olson, the Newport School Superintendent, advised Mr. Meyers of the need to comply with the residency policy. At that time, there was a shortage of housing in the Newport area.

In April 1979 Mr. Meyers found a home at Diamond Lake, approximately 7 miles from the school, but within the boundary of the District. Mr. Meyers alleges he told the Superintendent of his planned relocation and of his desire to avoid the summer rental rates at Diamond Lake by delaying his move until September 1, 1979. He maintains

---

[1]At its July 12, 1976 school board meeting the District outlined the following residency policy:

"10. Motion made by Director Rusho, second by Director Odell, that teachers hired after July 1, 1976 must, as a condition of employment, live within the District. Any exceptions to this rule must be recommended by the Superintendent and approved by the Board. Teachers would be given a reasonable time to find housing."

this met with the approval of Mr. Olson who assured him his contract would not be revoked if he obtained housing within the District by September 1, 1979. Mr. Olson denies making this statement and asserts he told Mr. Meyers that failure to comply would result in nonrenewal of his contract.

On May 15, 1979, Mr. Meyers was served with a notice of nonrenewal. The stated grounds were Mr. Meyers' failure to comply with the acknowledged residency policy and Mr. Olson's instructions to move within the District. Pursuant to RCW 28A.67.072[2] Mr. Meyers scheduled an informal meeting with the Superintendent. Mr. Olson's refusal to reverse his decision was appealed to the District board of directors which also determined not to renew the contract on the basis of noncompliance with the residency requirements.

The Newport Educational Association filed a grievance on behalf of Mr. Meyers on June 6, 1979. The grievance was

---

[2]RCW 28A.67.072 states:

"Notwithstanding the provisions of RCW 28A.67.070 as now or hereafter amended, every person employed by a school district in a teaching or other non-supervisory certificated position shall be subject to nonrenewal of employment contract as provided in this section during the first year of employment by such district. Employees as defined in this section shall hereinafter be referred to as 'provisional employees'.

"In the event the superintendent of the school district determines that the employment contract of any provisional employee should not be renewed . . . such provisional employee shall be notified thereof in writing . . . which notification shall state the reason or reasons for such determination. . . .

"Every such provisional employee . . . shall be given the opportunity to meet informally with the superintendent for the purpose of requesting the superintendent to reconsider his or her decision. . . .

". . . [T]he superintendent shall . . . submit to the school district board of directors for consideration at its next regular meeting a written report . . . [T]he board of directors shall consider any written communication which the provisional employee may file . . .

". . . *The decision of the board of directors to nonrenew the contract of a provisional employee shall be final and not subject to appeal.*

". . . This section provides the exclusive means for nonrenewing the employment contract of a provisional employee and no other provision of law shall be applicable thereto, including, without limitation, RCW 28A.67.070 . . ." (Italics ours.)

dismissed following arbitration on November 9, 1979. Mr. Meyers filed an action on July 24, 1979 seeking a declaratory judgment that the residency policy and RCW 28A.67-.072 were unconstitutional and also asserting the District was equitably estopped from denying Mr. Meyers complied with the residency requirement. Both parties moved for summary judgment. The court initially ruled Mr. Meyers' failure to appeal the adverse ruling of the arbitrator did not bar him from pursuing this action.[3] The court further ruled both the residency policy and RCW 28A.67.072 were constitutional.

Initially, Mr. Meyers claims RCW 28A.67.072, the provisional teachers statute, is violative of both the state and federal constitutions since it denies provisional teachers a right to a hearing and appeal following the nonrenewal of their teaching contract and is an improper classification. Mr. Meyers argues since nonprovisional teachers may appeal a decision based on probable cause under RCW 28A.67.070,[4] a provisional teacher should also be allowed to appeal the decision that there was sufficient reason for nonrenewal under RCW 28A.67.072.

■ A hearing is required if a person is deprived of a property interest. Property interests are defined by rules

---

[3]We agree with the trial judge's interpretation of this issue. The collective bargaining grievance procedure is not a proper bar to Mr. Meyers' claim of alleged violations of his constitutional rights. Article VI, section 9 of the Master Contract provides in part: "nonrenewal . . . shall not be subject to the grievance procedure."

[4]RCW 28A.67.070 states, in part:
"In the event it is determined that there is probable cause or causes that the employment contract of an employee should not be renewed by the district for the next ensuing term such employee shall be notified in writing . . . which notification shall specify the cause or causes for nonrenewal of contract. Such determination of probable cause for certificated employees . . . shall be made by the superintendent. . . . Every such employee so notified . . . shall be granted opportunity for hearing pursuant to RCW 28A.58.455 to determine whether there is sufficient cause or causes for nonrenewal of contract. . . .
"This section shall not be applicable to 'provisional employees' as so designated in RCW 28A.67.072; . . . ."

which stem from state law. *Bishop v. Wood,* 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976); *State ex rel. Swartout v. Civil Serv. Comm'n,* 25 Wn. App. 174, 182, 605 P.2d 796 (1980). Generally, there is no constitutional "property" interest in public employment. *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 461, 583 P.2d 1213 (1978).

■■ Although the legislature provided that nonprovisional teachers may appeal a school board's decision to discharge them, RCW 28A.67.070 also states: "This section shall not be applicable to 'provisional employees' as so designated in RCW 28A.67.072", which begins:

> *Notwithstanding the provisions of RCW 28A.67.070 . . . every person employed by a school district in a teaching or other nonsupervisory certificated position shall be subject to nonrenewal of employment contract as provided in this section during the first year of employment by such district.*

(Italics ours.) Appellate courts must give effect to the intent of the legislature ascertained from the statute as a whole and interpreted in terms of the general object and purpose of the legislation. *Strenge v. Clarke,* 89 Wn.2d 23, 29, 569 P.2d 60 (1977). It is apparent the legislature intended a separate classification for provisional teachers as contrasted with nonprovisional teachers. That there must be a reason for nonrenewal of a provisional teaching contract does not elevate a provisional teacher's rights to those accorded a nonprovisional teacher. We do not equate the terms "probable cause" under RCW 28A.67.070 with "reasons" under RCW 28A.67.072; many reasons may not equal probable cause. Since the legislature specifically did not extend the right to appeal for provisional teachers, no right is afforded. *Bishop v. Wood, supra.*

■■ Since Mr. Meyers' employment is not a fundamental right, classification between nonprovisional and provisional teachers is analyzed under the 3–pronged rational basis test enunciated in *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 478, 611 P.2d 396 (1980):

(1) Does the classification apply alike to all members within the designated class? (2) Does some basis in reality exist for reasonably distinguishing between those within and without the designated class? (3) Does the classification have a rational relation to the purpose of the challenged statute?

First, it is clear RCW 28A.67.072 applies alike to all first-year teaching employees in the district. Second, a probationary period is a legitimate precondition to bestowing benefits of public employment. *Ross v. Department of Social & Health Servs.*, 23 Wn. App. 265, 271, 594 P.2d 1386 (1979). Third, a rational basis exists because of the need for a probationary period in which an employer may observe the performance of the provisional employee before the conferral of greater procedural protections under RCW 28A.67.070. Thus, we conclude there is a rational basis for the constitutionality of RCW 28A.67.072. Absent a direct collision between the legislation and the constitution, we are constrained to uphold the judgment of the legislature rather than substitute ours. As stated by Mr. Justice Holmes:

> I think the proper course is to recognize that a state legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution of the United States or of the State, and that Courts should be careful not to extend such prohibitions beyond their obvious meaning by reading into them conceptions of public policy that the particular Court may happen to entertain.

*Tyson & Brother-United Theatre Ticket Offices, Inc. v. Banton,* 273 U.S. 418, 446, 71 L. Ed. 718, 47 S. Ct. 426, 433-34, 58 A.L.R. 1236 (1927) (dissenting opinion). It is up to the legislature, not the courts, to decide the wisdom and utility of legislation. *Ferguson v. Skrupa,* 372 U.S. 726, 10 L. Ed. 2d 93, 83 S. Ct. 1028, 95 A.L.R.2d 1347 (1963). We find no error.

Moreover, although no right to judicial review exists, we

do not find a lack of due process.[5] A provisional teacher may appeal the merits of his or her case to the superintendent[6] and ultimately the school board. Additionally, limited review under a writ of certiorari may, under certain circumstances, be accorded. *Standow v. Spokane,* 88 Wn.2d 624, 630, 564 P.2d 1145 (1977).

Next, Mr. Meyers alleges the residency policy infringes on his freedom of travel. We disagree.[7]

■ There are two types of residency requirements: durational and continual. The durational type requires a person, as a condition precedent to the conferral of a benefit or a right, to reside in a particular area for a specified length of time. Durational (waiting period) residency requirements have been struck down as unconstitutional because they classify residents into groups who have fulfilled the residency requirements and those who have not. *King v. New Rochelle Mun. Housing Auth.,* 442 F.2d 646, 648 (2d Cir. 1971); *Cole v. Housing Auth.,* 435 F.2d 807 (1st Cir. 1970). On the other hand, continual residency requires a person to reside in a particular area for continued employment. This type of residency requirement has been held not to burden the fundamental right to travel. *Duranceau v. Tacoma,* 27 Wn. App. 777, 780, 620 P.2d 533 (1980); *Guttu v. East Grand Forks,* 294 N.W.2d 735, 736 (Minn. 1980).[8] Since

---

[5]We note the merit system rules under WAC 356–30–270(2) also limit the appeal rights of probationary state civil servants:

"(2) An employee dismissed during a probationary period shall not have the right to appeal the dismissal." *See also State ex rel. Swartout v. Civil Serv. Comm'n, supra* at 179–80.

[6]The superintendent's role is not inconsistent with due process because the superintendent does not have the power of ultimate decision. *Booker v. South Cent. School Dist. 406,* 23 Wn. App. 274, 276, 597 P.2d 395 (1979).

[7]We find the residency policy was validly enacted. Mr. Meyers admits he had notice of the residency policy. We view as ministerial oversight the absence of any indication the motion was passed. The record indicates the policy was in effect and that others were requested to comply. See footnote 9, *infra.*

[8]Case law is clear that authorities may provide that nonresidents must estab-

the instant residency policy allows teachers to be hired so long as they move within the district in a reasonable amount of time, it is continual and thus does not violate a fundamental right.

Our analysis of the residency policy therefore hinges upon the rational basis test. *Equitable Shipyards, supra.* It is understandable that the school board desires teachers to live within the district for the purpose of community involvement and in order to educate their children within the district in which they work.[9] *See Ector v. Torrance,* 10 Cal. 3d 129, 514 P.2d 433, 109 Cal. Rptr. 849 (1973), *cert. denied,* 415 U.S. 935, 39 L. Ed. 2d 493, 94 S. Ct. 1451 (1974). In *Ector* the Supreme Court of California upheld a municipal employee residency requirement noting:

> Among the governmental purposes cited in these decisions or now urged by amici curiae are the promotion of ethnic balance in the community; reduction in high unemployment rates of inner–city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee per-

---

lish their residence in a particular community during their period of employment under penalty of forfeiting that position if they fail to do so. "A city may require residential and other qualifications from its . . . employees." *Surry v. Seattle,* 14 Wn.2d 350, 358, 128 P.2d 322 (1942); *Berg v. Minneapolis,* 274 Minn. 277, 143 N.W.2d 200, 203 (1966) (and cases cited therein).

[9]The following transpired during the deposition of Superintendent Olson:

"Q. Okay. Since the initiation of this . . . 'Residency Policy', . . . has the Board either directly or indirectly made exceptions to that Policy and if so provide the names of any and all persons who have been exempted from its application?

"A. I'm not aware of any formal actions of exemptions in the District.

"Q. Has the Board, through its failure to act in enforcing the Policy, tolerated individuals other than Craig Meyers living without the limits of the School District?

"A. Just the contrary, that we come [sic] to an agreement. A gal resigned her position, a Mrs. Berry, during the '78–79 school year, resigned her position in December because her [sic] and her husband refused to move within the School District.

"Q. But to answer my question: There are no exceptions where the Board has failed to enforce it?

"A. Not one that's become known. No, we've—we check."

formance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries. We cannot say that one or more of these goals is not a legitimate state purpose rationally promoted by the municipal employee residence requirement here in issue.

*Ector v. Torrance, supra* at 10 Cal. 3d at 135, 109 Cal. Rptr. at 852. Many of these reasons may be recognized as a basis for the instant residency policy, including the ability to vote within the community. We find the residency policy, on its face, passes constitutional muster.[10]

Mr. Meyers also asserts the residency policy is unconstitutional as applied to him because he lived within the community serviced by the District.

When an enactment is challenged upon the ground it is unconstitutional as applied, the person making such a challenge has the burden of demonstrating unequal application. *See County of Dane v. McManus,* 55 Wis. 2d 413, 198 N.W.2d 667, 674 (1972); *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). It is undisputed the policy was applied equally to all teachers. Although some unfairness to Mr. Meyers may be present, he has shown no infringement upon his constitutional guaranties. It must be recognized that laws are to some extent inherently unequal. Almost every legislative enactment involves some disparity in treatment, since few, if any affect every one in the same manner.[11] We cannot find the application here unconstitu-

---

[10]As appropriately stated by the court in *Kennedy v. Newark,* 29 N.J. 178, 183, 148 A.2d 473, 476 (1959):

"The question is not whether a man is free to live where he will. Rather the question is whether he may live where he wishes and at the same time insist upon employment by government."

[11]The usual legislative method is to provide for or regulate various classes of people, *i.e.,* military conscription laws are applied to men, not women; income tax laws would affect only persons in certain income brackets.

tional.

Mr. Meyers also maintains the trial court erred in denying his equitable estoppel claim based upon his alleged conversation with the school superintendent. The record does not indicate Mr. Meyers actually presented his estoppel claim to the board.[12] If it was not before the board, it was also not properly before the trial court. It was Mr. Meyers' responsibility to raise his defenses at the board level. A reviewing court cannot pass upon issues not actually decided by an administrative agency. *Wahler v. Department of Social & Health Servs.*, 20 Wn. App. 571, 576, 582 P.2d 534 (1978); *see also Shufeldt v. Department of Labor & Indus.*, 57 Wn.2d 758, 359 P.2d 495 (1961).[13] Moreover, if the estoppel claim was before the board, it was therefore considered and a review of that decision is precluded by RCW 28A.67.072. We find no error by the trial court.

Judgment of the Superior Court is affirmed.

GREEN and ROE, JJ., concur.

Reconsideration denied March 12, 1982.

Review denied by Supreme Court May 21, 1982.

---

[12]Mr. Meyers' letter to the president of the school board dated June 1, 1979, stated in part:

"I would like to inform you of the following factors which are pertinent to this case:

"1. It was never indicated to me that my contract would be non–renewed if I delayed being in compliance with the in–district policy;

"2. I believe it to be unjust to have such severe action taken without a clear written warning of the consequences of delayed compliance;

"3. I had intention to comply and have at this time."

[13]Additionally, Mr. Meyers maintains *the court erred in denying his writ of certiorari.* We conclude the board complied with the mandate of RCW 28A.67.072 and therefore find no error by the court. Estoppel cannot be used for the purpose of conferring subject matter jurisdiction upon a court where a statute gives the exclusive remedy. *See, e.g., Wesley v. Schneckloth*, 55 Wn.2d 90, 93–94, 346 P.2d 658 (1959).