[No. 2596–2.   Division Two.   June 30, 1978.]

HARRY J. WAHLER, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Slade Gorton, Attorney General,* and *DonCosta E. Seawell, Assistant,* for appellant.

*Dean A. Floyd,* for respondent.

PETRIE, J.—The Department of Social and Health Services appeals from an order of the Superior Court reversing a decision of the State Personnel Board which held that it had no jurisdiction to entertain an appeal of respondent herein, Harry J. Wahler, who had sought reinstatement rights, including back pay, as an employee of the Department. We reverse the order of the Superior Court and reinstate the order of the Personnel Board.

The basic facts are not in dispute. For a number of years, Dr. Wahler was a permanent status civil service employee of the Department with a classification as research investigator IV. Beginning July 1, 1969, Dr. Wahler headed two state and federally funded research projects, the expediter and recover programs. On June 11, 1971, with the projects half completed, Dr. Wahler received a notice officially advising him "of your termination from your employ in the Office of Research effective July 31, 1971, due to a lack of funding."

Because the projects were of great importance to him, Dr. Wahler volunteered to donate his services to the Department in order to complete the work. Indeed, on June 18 he detailed a plan to the assistant secretary of the Department for continuation of the programs, indicating that he had been contacting responsible federal and state personnel in an attempt to salvage the programs, and expressly stating, "In order to continue the programs, I will donate my services," specifying his annual salary of $21,384. On July 16, he received a letter from Dr. Albert Meuli, administrator for institutional services for the Department, setting forth the terms of an understanding as to a continuance of the two research projects. In part, it said, "You will continue to serve as Project Director for the RECOVER and EXPEDITER projects, serving without remuneration from the state." Dr. Wahler signed the understanding, signifying his concurrence with its terms. The agreement further provided that Dr. Wahler would report directly to Dr. Meuli and that the Department would provide telephones, office furniture, and equipment. On August 26, 1971, Dr. Meuli advised Dr. Wahler in writing: "Even though you are donating your services in this regard, the Department does view you as its representative as Project Director."

Two other project employees had received reduction–in–force termination notices at the same time as Dr. Wahler. After Dr. Wahler volunteered to donate his services, those employees received letters expressly rescinding their terminations. He, on the other hand, never received any notification expressly rescinding his termination notice. The project was completed in November 1972. During that time, Dr. Wahler worked 50 to 60 hours per week without receiving any financial remuneration from the State. He supervised other project employees and was designated as the State's representative when dealing with outside agencies.

On November 10, 1972, Dr. Wahler filed an "appeal" with the Washington State Personnel Board, requesting reinstatement to his former position and back pay from

July 31, 1971. After conducting hearings, the Board dismissed the appeal on jurisdictional grounds because the appeal had not been timely filed. The Board reasoned that because Dr. Wahler's termination notice was effective July 31, 1971, and because it was never officially revoked, his appeal was not filed within the 30-day period allowed by statute.[1] Additionally, the Board found that at Dr. Wahler's request he was permitted, after July 31, 1971, "to perform voluntary services for the experimental mental health projects with which he had been associated prior to layoff." Consequently, the Board concluded it lacked jurisdiction to entertain the appeal.

Dr. Wahler then appealed the Board's decision to Superior Court. The trial court found that the termination notice of June 11, 1971, "was overlooked and effectively set aside by the subsequent negotiations and agreements" and concluded that because Dr. Wahler continued to perform work he was an employee. Consequently, the court awarded back pay from July 31, 1971, to the date of the court's order, October 13, 1976. The Department now appeals to this court.

■ At the outset, we are faced with the question of whether this matter is properly before us. RCW 41.06.210(2) states in part:

> Appeal shall be available to the *employee* to the supreme court or the court of appeals from the order of the superior court as in other civil cases.

(Italics ours.) Similar language contained in RCW 41.06.200(1)[2] has been held to deny an employing state agency the right to appeal a personnel board decision to superior court. *State Liquor Control Bd. v. State Personnel*

---

[1] In 1972, RCW 41.06.170(2) provided in part:

"Any employee who is reduced, dismissed, suspended or demoted, after completing his probationary period of service as provided by the rules and regulations of the board, shall have the right to appeal to the board not later than thirty days after the effective date of such action."

[2] RCW 41.06.200(1) provides in part: "[T]he *employee* may appeal to the superior court of Thurston County, . . ." (Italics ours.)

*Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977). In that case, the court held that the administrative procedures act, RCW 34.04.130, did not impliedly repeal RCW 41.06.200. The court said:

> Because the administrative procedures act contains no comprehensive standing provision, there is no clear inconsistency between that act and the provision of the State Civil Service Law limiting the right of appeal to employees. We conclude that RCW 41.06.200 remains in effect . . .

*State Liquor Control Bd. v. State Personnel Bd., supra* at 376. *Cf. Olson v. University of Washington,* 89 Wn.2d 558, 573 P.2d 1308 (1978) (specific provisions of RCW 28B.16-.150 control general provisions of administrative procedures act). *See also Gogerty v. Department of Institutions,* 71 Wn.2d 1, 426 P.2d 476 (1967), where the department sought review in the Supreme Court by a writ of certiorari apparently because the department assumed it had no right to appeal under RCW 41.06.210(2).

Inasmuch as the Department improperly appealed in this case, we view the notice of appeal as a motion for discretionary review. *See* RAP 5.1(c). Considerations governing acceptance of a motion for discretionary review are set forth in RAP 2.3(b).[3]

In this case the only issue properly before the trial court was whether the Board's decision—that it lacked jurisdiction—was erroneous as a matter of law, was arbitrary or capricious, or was contrary to a preponderance of the evidence.[4] In our opinion, the trial court departed sub-

---

[3]RAP 2.3(b) provides:

"Discretionary review will be accepted only:

"(1) If the superior court has committed an obvious error which would render further proceedings useless, or

"(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act, or

"(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court."

[4]RCW 41.06.200(1) provides in part: "[T]he employee may appeal . . . on one

stantially from the accepted and usual course of judicial proceedings by attempting to consider and determine the merits of Dr. Wahler's claim for back pay, an issue which the Board had not reached. Indeed, the court's findings of fact and conclusions of law do not even address the issue of whether the Board erred in determining that it had not jurisdiction in the case. A reviewing court cannot pass upon issues not actually decided by the administrative agency. *Shufeldt v. Department of Labor & Indus.*, 57 Wn.2d 758, 359 P.2d 495 (1961); *Lenk v. Department of Labor & Indus.*, 3 Wn. App. 977, 478 P.2d 761 (1970). The Department's implied motion for discretionary review is granted.

▮ We turn then to a determination of the correctness of the Board's decision on jurisdiction. In that role, we are limited to a review of the record made at the Board level, including the exhibits presented to the Board. RCW 41.06-.210. We apply the same standard of review required of the superior court. RCW 41.06.200. On the basis of that record, we affirm the Board's order, albeit for slightly different reasons than expressed in its order.

At its hearings, the Board limited evidence to the narrow question of whether Dr. Wahler's termination notice was proper. It concluded that the notice was proper and was not expressly rescinded; therefore, the appeal was untimely. Dr. Wahler made an offer of proof tending to demonstrate that although the notice was valid, the Department had by its subsequent actions continued his employment on a de facto basis. We accept the fact matters presented in this offer. If Dr. Wahler's argument is accepted, his employment did not terminate until the projects were completed in November 1972. In that event, his appeal to the Board would have been timely, and the Board would have had jurisdiction to determine whether he was entitled to back pay.

---

or more of the grounds that the order was:

"(a) Founded on or contained error of law . . .

"(b) Contrary to a preponderance of the evidence as disclosed by the entire record with respect to any specified finding or findings of fact;

". . .

"(e) Arbitrary or capricious."

The Board was apparently operating on the assumption that there was no legal way in which Dr. Wahler's employment status could have continued after he received the June 11 termination notice. The fact that two other employees received *written* revocation of their reduction-in-force termination notices belies such a conclusion.

We are not advised of any statutory provisions or board rules which govern the methods for revoking a termination notice which has been validly given. However, WAC 356-30-330(4) (formerly WAC 356-24-400(4)) provides that vacancies will not be filled without contacting the Department of Personnel in an effort to fill positions by qualified employees who have been or are *scheduled for separation* due to reduction in force. Additionally, WAC 356-26-020 provides that the appointing authority may fill a vacancy after making reference to lists of employees who have been officially notified they are *scheduled for reduction in force.*

■ The Department of Social and Health Services maintains, in effect, that no vacancy for employment existed and that it simply accepted the volunteered services of Dr. Wahler. He, on the other hand, although acknowledging that he "foolishly" volunteered, insists that the State has no authority to accept the services of a volunteer without compensating him in accordance with duly promulgated salary schedules.

In support of his contention, Dr. Wahler directs our attention to the repeated pronouncement of the Supreme Court regarding public employment

> that an agreement by an employee of a municipal corporation to accept a wage or salary less than that provided for by law, is void as against public policy; and that such employee is not estopped to maintain an action for the balance of the salary which he agreed to remit.

*Malcolm v. Yakima County Consol. School Dist. 90,* 23 Wn.2d 80, 83, 159 P.2d 394 (1945) and cases cited therein.

We find no fault with that rule of law. Nevertheless, it is applied when, as indicated in *Malcolm,* a court concludes

that the agreement was "designed to evade" the appropriate statutory employment pattern. In the case at bench, there is not the slightest hint that the parties intended to evade the State Civil Service Act. Indeed, the act was scrupulously followed as soon as the decision was made to curtail expenditure of funds by terminating the two projects which Dr. Wahler directed. It was only his persistent efforts and insistence upon volunteering his services to complete the projects which restored them to life.

We view Dr. Wahler's activities over the 15 months from August 1971 to November 1972 as being purely volunteered, *i.e.*, he rendered services without any agreement, express or implied, to receive any compensation. Indeed, he performed work "foolishly," as his counsel expresses it, of his own free will with an understanding that he would *not* be compensated financially for his efforts. He now contends that the State of Washington cannot accept the services of a volunteer because all state *employees* are (unless specifically exempt, which he was not) subject to the State Civil Service Law, RCW 41.06.

We respond to that contention by declaring that, as a pure volunteer, a status which he vigorously sought, he was not a state employee. He may have contracted to perform personal services (but hardly a contract which the State could have enforced); indeed, he may have supervised and evaluated other state employees; and he may have been recognized as a project director; but all those services and recognitions were part of his activities as a pure volunteer, not as an employee.

We hold that the notice of termination officially served upon Dr. Wahler on June 11, 1971, was never impliedly or expressly rescinded. Accordingly, his appeal to the Personnel Board was untimely, and the Board had no jurisdiction to hear and determine the merits of his appeal. Further, since he was no longer an "employee" in 1972, he no longer had any rights under RCW 41.06 and, specifically, had no right to appeal to the Personnel Board under RCW 41.06.170.

579

The order of the Superior Court is reversed, and the order of the Personnel Board dismissing his appeal is reinstated.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied August 3, 1978.