[No. 5325-0-II.   Division Two.   January 18, 1983.]

PHILIP E. GLADDING, *Respondent,* v. THE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *Michael
Hanbey, Assistant,* for petitioner.

*Edward E. Younglove III,* for respondent.

PETRIE, J.—The Department of Social and Health Services (DSHS) filed a notice of appeal with this court from an order of the Superior Court for Thurston County reversing an order of the Washington State Personnel Board[1] which had affirmed DSHS's demotion and reduction in pay of Philip E. Gladding, an employee of DSHS. We reverse and reinstate the Board's order.

Before reaching the merits of this review, two preliminary matters must be discussed.

First, following DSHS's filing of the notice of appeal, Gladding filed a motion to dismiss for the reason that under former RCW 41.06.210(2), DSHS has no right of appeal. *See Wahler v. Department of Social & Health Servs.,* 20 Wn. App. 571, 582 P.2d 534 (1978). In response, DSHS requested that we view the notice of appeal as a motion for discretionary review. Pursuant to RAP 17.2(a) the motion came before our court commissioner, who (1) pursuant to RAP 5.1(c) gave the notice of appeal the same effect as a notice for discretionary review; (2) after reviewing and analyzing such of the record as was presented to him, held that "[t]he court appears to have committed error warranting acceptance of review"; and (3) ruled that review be granted. Gladding moved to modify the commissioner's ruling and, pursuant to RAP 17.2 and 17.7, the cause came on before a panel of this court. After review, the panel denied Gladding's motion.

Both in his brief and at oral argument, asserting that he was proceeding in accordance with RAP 10.4(d),[2] Gladding sought to review both his motion to dismiss the appeal and his motion to modify the commissioner's ruling. The rules

---

[1] The appellate function of deciding employee appeals filed after July 1, 1981, now lies with a "personnel appeals board." RCW 41.64.090.

[2] RAP 10.4(d) provides:
"A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits."

on appeal do not provide for "renewal" of a decision or order of an appellate court. We presume, therefore, that Gladding's attempt to renew his previous motions is in the nature of either a motion for reconsideration or a motion designed to preserve his right to seek discretionary review of the panel's order in the Supreme Court.

■ The panel's order denying Gladding's motion to modify the commissioner's ruling was an "interlocutory decision" within the meaning of RAP 12.3(b) and 13.3-(a)(2). A party seeking review by the Supreme Court of an interlocutory decision must file a motion for discretionary review within 30 days after the decision is filed. RAP 13.3(c), 13.5(a). Gladding did not pursue that avenue of review. We will not presume, however, to determine the effect of this failure upon Gladding's right to seek review of the panel's order. We hold simply that the rules on appeal do not provide for a motion addressed to this court to reconsider an order of a panel of the court which denied a motion to modify a commissioner's ruling. Accordingly, we refuse to reconsider the panel's order entered in this case.

The second preliminary matter is the standard of review by which this court must be governed in this case. Gladding urges us to modify the rather limited extent of judicial review of an appeal from a decision of the Personnel Board, *i.e.,* a search for "substantial evidence" to sustain the Board's action as enunciated in *Gogerty v. Department of Insts.,* 71 Wn.2d 1, 426 P.2d 476 (1967). *See* RCW 41.06-.200(1)(b), subsequently repealed but reenacted verbatim in RCW 41.64.130(1)(b), applicable to appeals from the Personnel Appeals Board. His primary reason for urging a change lies in the fact that when *Gogerty* was decided witnesses appeared in person before the members of the Board; whereas, under the practice prevailing at the time this matter was before the Board, witnesses appeared before a hearings officer and the members of the Board usually had before them only a taped recording of witnesses' testimony. Hence, Gladding contends, at least as to the issue of credibility of witnesses, the opinion of the

hearings officer—not that of the Board—should be accorded the benefit of the rule in *Gogerty.*

■ The correct application of the rule is simply that a reviewing court (the trial court or an appellate court) may take into consideration the views of the hearings officer *and* those of the Board, but that upon review of the record as a whole courts must sustain the findings of the Board if substantial evidence supports them. Taking into consideration the views of the hearings officer was suggested in *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 8 Wn. App. 448, 506 P.2d 1306 (1973), *rev'd on other grounds,* 83 Wn.2d 446, 518 P.2d 1237 (1974), (without comment as to the efficacy of consideration of a hearings officer's views).

We are disinclined further to modify the rule in *Gogerty* unless specifically required by subsequent opinion of the Supreme Court. Accordingly, we will review the record as a whole to ascertain whether there is substantial evidence, as defined in *Gogerty,* to sustain the Board's decision.

Turning to the merits of the appeal we note a striking similarity between most of the hearings officer's findings and those subsequently made by the Board. In April 1976, Mr. Gladding was promoted from his position as classification counselor 2 to that of unit program supervisor. As such, he supervised a unit team treatment and custody staff in a resident housing unit called Cedar Hall at the Washington State Corrections Center at Shelton. Gladding's team comprised nine correction officers, a correction sergeant and two counselors.

The unit team concept is an approach to decisionmaking which gives all staff personnel input into the process. The concept requires that the unit team supervisor initiate and encourage input from all staff members. Gladding's team was responsible for all aspects relating to the living unit such as undertaking disciplinary actions, processing visits and furloughs, and carrying out all immediate functions regarding residents in the hall, including participation on the major classification and discipline committees and sev-

eral minor committees relating to the living unit.

The typical supervisory work of a unit program supervisor, as set forth in specifications for the position, includes planning, assigning, and evaluating work of the subordinates in relation to published missions and goals; coordinating residents' schedules for counseling, work release, education, and vocational training programs; and reviewing and approving (or disapproving) recommendations for residents' reclassification and readiness for parole so as to assure timely presentation of residents' cases to the parole board.

It is apparent from the record that for more than a year prior to Gladding's demotion to a classification counselor 3 position in December 1977, he and his immediate supervisor did not enjoy an ideal rapport with one another concerning the manner in which Gladding was conducting his supervisory responsibilities. Both the hearings officer and the Board identified and found by a preponderance of the evidence a series of errors on the work of the unit attributable either directly to Gladding or to him through the completed work concept. The Board concluded that these errors established Gladding's inefficiency to perform as a supervisor; the hearings officer did not.

Of major concern to Gladding's supervisors was his method of conducting weekly staff meetings and his handling of homosexually oriented residents. These issues reached an intolerable point in August 1977, from the viewpoint of Gladding's immediate supervisor. On August 31, 1977, the supervisor attended a Resident Unit Advisory Committee (RUAC) meeting at which Gladding presided. Following that meeting the supervisor wrote a memorandum dated September 6, 1977, to Gladding in part as follows:

> The meeting was conducted in such a way that it negated the opportunity for unit staff to be productive participants. In effect, even with staff there, it tends to be a one-man Unit Team. Counselors were not in attendance and officers were moving in and out randomly. The

Unit Sgt. was late and appeared very uncomfortable. Why is a meeting held at a time when everyone who should be present can't be because of working duties? One counselor dropped in for a moment and immediately vacated and it was obvious he was not expected to be there.

An additional concern is the practice of labeling residents homosexual and speaking freely of their names to the RUAC members. Under no circumstances should that ever happen even if the resident talked about identifying himself as a homosexual. In the future, please rearrange your meeting schedule to allow for both counselors to be in attendance.

Both the hearings officer and the Board found that Gladding's supervisor made suggestions in January 1977, with regard to implementation of procedures for the conduct of meetings and to facilitating staff input. The hearings officer found that Gladding adopted these suggestions. The Board found that Gladding "did not fully institute the unit teams approach in accordance with directions he received from his supervisors" and cited as an "example of the continuing problems as seen by management" the September 6 memorandum. Based in part upon the foregoing failure to manage the team as set forth above, the Board concluded:

The Appellant [Gladding] had knowledge of the program adopted by management, but refused as supervisor to lead his team in accordance with administrative policies.

Accordingly, the Board concluded:

The Appellant's [Gladding] refusal to implement the supervisory leadership in the unit team concept in accordance with specific directions of his supervisors constitutes insubordination and the demotion of the Appellant was appropriate.

Needless to say, the record was replete with testimony by Gladding's supervisors to support their versions of Gladding's inefficiencies and insubordination. The Board chose to accept that type of testimony as opposed to Gladding's own testimony and that of some of his subordinates. We find substantial evidence, as defined in *Gogerty,* to support

the Board's action. We will not alter it.

Judgment reversed with direction to reinstate the Board's order.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied February 9, 1983.

Review denied by Supreme Court March 29, 1983.