[No. 21778-3-II.   Division Two.   September 25, 1998.]

THE DEPARTMENT OF CORRECTIONS, *Respondent*, v. THE PERSONNEL APPEALS BOARD, *Defendant*, DEBRA BAKER, *Appellant*.

*Mark S. Lyon*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Michael P. Sellars* and *John F. Dziedzic, Assistants*, for respondent.

ARMSTRONG, J. — The Department of Corrections (DOC)

permanently demoted Debra Baker, a mental health supervisor, for six incidents of alleged misconduct. Baker appealed to the Washington State Personnel Appeals Board (PAB), which sustained only two of the charges and modified the discipline to four months of temporary demotion. DOC sought review by filing a Petition for Writ of Certiorari in the superior court. The superior court found the PAB's decision arbitrary and capricious as to four of the charges and remanded for the PAB to modify its sanction. On a second review, the superior court affirmed PAB's modified decision and Baker appeals. We reverse the trial court's finding that the decision was arbitrary and capricious and reinstate the original decision and sanction of the PAB.

## FACTS

Debra Baker was employed by the Department of Corrections as a Corrections Mental Health Supervisor. She was in charge of a team of four therapists who treated incarcerated sex offenders in the Sex Offender Treatment Program (SOTP) at the Twin Rivers Corrections Center (TRCC). The SOTP involved three phases of treatment: Phase 1 involved assessment and intake into the program; Phase 2 involved inpatient treatment and counseling of inmates for sexual deviancy during their incarceration; Phase 3 involved transition from inpatient treatment to independent living in the community.

As part of her duties, Baker was treating an inmate, S.H., for multiple personality disorder. Inpatient treatment of such inmates often involved work with stuffed animals as part of the therapy. These stuffed animals were used as "transition" objects to ease the transition from one alternate personality to another and to help the "alters" integrate. S.H. was permitted to keep a teddy bear and a dinosaur in his cell while he was incarcerated.

S.H. was scheduled to move to Phase 3 of the SOTP and be released into the community on May 26, 1992. Baker

had drafted a transition plan for which she received approval on May 18, 1992.

S.H. was to work with another therapist in Phase 3, Caroline Melhuish. On May 28, 1992, Baker had scheduled a meeting with S.H., Melhuish, and Michelle Manning, S.H.'s Community Corrections Officer, to introduce Melhuish and Manning to S.H.'s alternate personalities. The meeting was scheduled for 2:30 P.M.

In addition to this meeting, Baker planned to observe S.H. and perform a "follow-up assessment" according to the transition plan she developed. Baker arrived at S.H.'s apartment at 10:30 A.M. on May 28, and proceeded to review relapse prevention plans and evaluate S.H.'s interaction in his community. Baker brought with her the teddy bear and dinosaur that had been S.H.'s transition objects in Phase 2; she left both with S.H. As part of her observation, Baker accompanied S.H. to the unemployment office, to Pike Place Market, to a toy store, and to his evening group therapy session.

On June 8, 1992, Baker, Melhuish, Manning, and S.H.'s lead therapist from Phase II, MaryAlyce Stamatiou, met with S.H. at his apartment for another transition-assessment session and to go over S.H.'s relapse prevention plan. During the session, Baker sat on the floor with S.H. and encouraged the "alters" to come forward. A child alter named "little Stevie" emerged and S.H. lunged toward Baker, throwing his arms around her shoulders and repeating "I love you." Baker disengaged while comforting "little Stevie." According to Melhuish, Baker responded to "little Stevie" by saying "I love you," though Baker denied saying this. None of the therapists filed a written report about the touching incident, though Baker verbally reported it to her boss, Barbara Schwartz, SOTP's clinical program director.

## ANALYSIS
### A. Disciplinary Proceedings and Appeals

Six allegations of misconduct were levied against Baker, only three of which concern us. These three included allegations that Baker:

1) Provided gifts to S.H. between May 26, 1992, and May 28, 1992, in violation of DOC Policy Directive 854.075;

2) Had unauthorized contact with S.H. from 10:30 am to 2:30 pm and from 3:30 pm to 6:15 pm on May 28, 1992, in violation of DOC Policy 570.000, Janet Barbour's memo dated January 13, 1992 regarding treatment of MPDs, DOC Policy 854.075, and Baker's Classification Questionnaire;

3) Had unauthorized physical contact with S.H. on June 8, 1992, and failed to file a written report concerning the contact in violation of TRCC Field Instruction TR 854-070;

Based on the six allegations, DOC notified Baker that she was to be permanently demoted. Baker appealed to the PAB, which after a hearing, found misconduct as to two of the charges, but exonerated Baker on the above three charges. The PAB modified the discipline to a four-month temporary demotion and ordered that Baker be reinstated to her position with back pay and benefits.

DOC filed a Petition for Common Law Certiorari and Review of Administrative Decision seeking review of the PAB decision, which the superior court issued. After a hearing, the superior court ruled that the PAB decisions on the above three charges were arbitrary and capricious, and remanded to the PAB to determine the appropriate sanction.

On remand, the PAB imposed a six-month temporary demotion. Both Baker and the DOC sought second review by the superior court, which affirmed the modified decision of the PAB. On appeal, Baker contends that the superior court erred in granting a constitutional writ of certiorari to review the PAB decision, and that the superior court erred in determining that the PAB decision was arbitrary and capricious. DOC does not appeal.

### B. Standing Required for a Constitutional Writ of Certiorari

The parties agree that the DOC does not have a right of

direct appeal to superior court in this matter. Appeal from decisions of the PAB is governed by RCW 41.64.130, which provides that only an employee may appeal PAB decisions. RCW 41.64.130(1). But DOC sought review through a "constitutional" writ of certiorari.[1] Const. art. IV, § 6.

Baker contends that DOC lacks standing, citing *State ex rel. Hood v. Washington State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973), for the proposition that "State agencies may not seek review of Personnel Board decisions by a common law Certiorari."

■■■ In *Hood*, the Liquor Control Board dismissed an employee, who appealed to the PAB. The PAB reinstated the employee and the Liquor Board sought review by constitutional writ of certiorari. The Supreme Court held that the court lacked jurisdiction to issue the writ because the Liquor Board had failed to show that the PAB arbitrarily and capriciously violated a fundamental right of the Liquor Board. *Id.* at 401-03. But the decision was based upon the rule that for the court to issue a constitutional writ, the petitioner must be able to demonstrate both that the challenged action was arbitrary and capricious and that it violated a fundamental right of the petitioner. *Id.* at 402-03. The *Hood* two-step process, however, was abandoned in *Williams v. Seattle Sch. Dist. No. 1*, 97 Wn.2d 215, 643 P.2d 426 (1982), and *Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Employees*, 98 Wn.2d 690, 658 P.2d 648 (1983), where the court held that any arbitrary and capricious action is subject to review because the right to be free from arbitrary and capricious action is itself a fundamental right. *Williams*, 97 Wn.2d at 222; *Pierce County Sheriff*, 98 Wn.2d at 693-94.

*Pierce County Sheriff* involved, as in *Hood*, a public

---

[1]There is also a statutory certiorari process by which administrative decisions can be reviewed, RCW 7.16.040. But the statutory writ is available only to review decisions of a judicial or quasi-judicial nature, and PAB decisions have been held to be administrative in nature. *State ex rel. Hood v. Washington State Personnel Bd.*, 82 Wn.2d 396, 400, 511 P.2d 52 (1973).

employer's decision to terminate an employee for alleged misconduct. The county civil service commission found that the charges had not been proved and ordered the employee reinstated. The sheriff then sought review in the superior court by constitutional writ. Although the court did not discuss standing, the issue was clearly addressed; the employee had challenged the sheriff's "right to appeal from an adverse civil service commission decision." *Pierce County Sheriff*, 98 Wn.2d at 693. And the court held that "[t]he Sheriff thus had a right to take the appeal which is challenged in the present case." *Id*. at 694. We conclude that the DOC has standing to challenge by constitutional writ the PAB decision as to one of its employees.

Baker raises several procedural arguments as to the petition.[2] We need not address these arguments, however, because we hold that DOC did not demonstrate that the decisions of the PAB were arbitrary and capricious.

## C. Arbitrary and Capricious Standard

We review an administrative agency action de novo. *Terhar v. Department of Licensing*, 54 Wn. App. 28, 30, 771 P.2d 1180 (1989); *Wahler v. Department of Soc. & Health Servs.*, 20 Wn. App. 571, 575, 582 P.2d 534 (1978). But the scope of review is limited:

> The scope of court review should be very narrow, however, and one who seeks to demonstrate that action is arbitrary and capricious must carry a heavy burden.
>
> Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even

[2]Baker alleged that the petition for the constitutional writ of certiorari was procedurally flawed because the petition was not sworn or verified, and no sworn or verified affidavit regarding the *allegations* made in the petition was filed. While it appears to be an open question what the procedural requirements for a constitutional writ of certiorari are in Washington, in light of our ruling we decline to address this issue.

though one may believe an erroneous conclusion has been reached.

*Pierce County Sheriff*, 98 Wn.2d at 695 (quoting *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980)). It is against this high standard that we test the decisions of the PAB.

1. Transition Item as "Gift"

The trial court ruled that the PAB acted arbitrarily and capriciously when it found that Baker did not make a gift of the teddy bear within the meaning of DOC policy 854.075.[3]

The PAB concluded:

The Appellant took a teddy bear, "Phillip Hope," to [S.H.] when she saw him at his apartment on May 28 . . . .

The teddy bear provided by the Appellant was integral to the Phase 3 transition specifically designed by and for [S.H.], an MPD client. We conclude her conduct did not constitute favoritism or giving of gifts as set forth in DOC Policy Directive 854.075(1) and (3).

DOC Policy Directive 854.075(3) states:

3. Trafficking: Without special written approval of the appointing authority, no employee may give or accept gifts, gratuities or favors, have any barter or financial dealings with an offender, an offender's family or agent. "Gratuities" include any form of property or services.

We conclude that this PAB decision was not arbitrary and capricious. S.H., although perhaps not an inmate at the time of the incident, was still receiving treatment. The teddy bear and dinosaur were treatment tools; the MPD inmates were allowed to take the animals back to their cells while in the institution. Providing the animals to S.H.

---

[3]Baker was originally accused of violating both the "favoritism" and "trafficking" sections of the policy, and the PAB decided that she had not violated either section. The trial court concluded that the PAB arbitrarily and capriciously decided that the teddy bear was not a "gift," but the trial court upheld the PAB's conclusion that Baker had not exhibited "favoritism."

after his release could be considered simply part of his continuing treatment, not a gift. Moreover, Baker's supervisor approved of the continuing use of the animals in S.H.'s treatment and did not consider them gifts. Thus, the PAB decision on this charge cannot be characterized as willful and unreasoning, without consideration and in disregard of facts and circumstances.

2. Memo's Provision of Operational Standards

The trial court next found arbitrary and capricious the PAB decision that Baker did not violate the standards in Janet Barbour's memorandum of January 13, 1992.

The memo in question states, in its first sentence: "The following is a summary of the discussion regarding treatment of Multiple Personality Disorders in the Sex Offender Treatment Program, that was held at TRCC on 11/19/91." The memo also provides in relevant part:

> At the present time the three MPD inmates in the program are receiving two 1-1/2 hour individual sessions per week with a therapist. In addition, they participate in a dissociative group once a month. The general consensus was that given the fact there are only three MPD inmates in the program at this time, the resources are available to provide that level of treatment. This is a situation that needs to be monitored by the Program Director however. If there is a significant increase in the number of MPD inmates, we will need to reassess whether we could continue to provide that level of treatment.

The PAB found that the memo was only a "synopsis" of the meeting and did not set operational standards. Further, the PAB found that Baker's transition plan provided for meeting with S.H. for follow-up counseling, that Baker's supervisor knew and approved of the plan, and that the plan did not propose a time limit for the meeting. The memo describes itself as "a summary of" a "discussion" of the current allocation of therapeutic resources. And the memo does not set limitations on the time allocated to the program, but states that the situation "needs to be monitored." Thus, reasonable persons could reach different

opinions as to whether the memo actually set operational standards. We cannot, therefore, conclude that this decision of the PAB was arbitrary and capricious.

### 3. Failure To Report the "Touching" Incident

Finally, the trial court found arbitrary and capricious the PAB's conclusion that Baker's failure to report her physical contact with S.H. on June 8, 1992, was not a violation of TR 854.070. The PAB concluded that:

> The contact took place during therapy. TRCC Field Instruction Number 854.070 provides that physical contact with an inmate is to be reported, however it provides an exception for certain limited contact in SOPT [the Sexual Offender Treatment Program]. It does not address physical contact which occurs outside the institution.

TRCC Field Instruction 854.070 requires a written report to be filed when any physical contact occurs between staff and inmates with the limited exception that in a group session staff and inmates may stand in a circle and hold hands, and that a "staff member may place his/her hand on an inmate's arm, shoulder, or hand as a gesture of support or encouragement, if done in the context of group or drama therapy."

But TRCC Field Instruction 854.070 applies to physical contact between staff and an "inmate." Whether S.H. was an inmate at the time of touching is debatable. Nothing in the record establishes that the PAB was given a controlling definition of inmate that squarely fit S.H. Indeed, the State has not cited any definition of "inmate" in its briefing before this court.[4] Thus, we cannot say that the PAB decision on this charge was arbitrary and capricious.

In conclusion, we reverse the trial court's decision that

---

[4]Further, we note that Field Instruction TR 854.070, which by its terms applies only to contact between staff and inmates, is narrower in scope than Department of Corrections Policies 854.075 and 570.000, which by their terms apply to "offenders." It is not arbitrary or capricious to conclude that, by use of the term "inmate," Field Instruction 854.070 applied to a narrower class of individuals (those incarcerated at the Twin Rivers facility) than the class encompassed by the term "offender."

the PAB's decision was arbitrary and capricious. Accordingly, we reinstate the decision of the PAB and the sanction imposed originally by the PAB.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.