IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82960-2-I-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALPERT, WAYNE HYMAN, | ) | |
| DOB: 07/03/1957, | ) | |
| | ) | |
| Petitioner. | ) | |

BOWMAN, J. — In Wayne Alpert's first appeal, we held that the trial court erred when it admitted his statements about the charged incidents after unequivocally invoking his right to counsel. We remanded for retrial and directed the trial court to suppress the tainted statements related to the murder charge. But the trial court held another suppression hearing on remand, considered additional testimony about whether a violation occurred, and did not suppress any statements. Because our mandate was the law of the case and binding on the lower court on remand, we grant discretionary review.[1]

FACTS

We repeat the relevant facts set forth in our prior opinion as necessary for the issues we address below. See State v. Alpert, No. 79147-8-I (Wash. Ct. App.

_____

[1] Although ordinarily decided by an order, we exercise our discretion under RAP 17.6(b) to explain our decision to grant discretionary review by an opinion. Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 460, 232 P.3d 591 (2010).

Citations and pin cites are based on the Westlaw online version of the cited material.

Dec. 21, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/ 791478.pdf.

In 2018, the State charged Alpert with second degree assault of Jeremy Gredvig while armed with a firearm and second degree murder of Seaton Jeffry Baker while armed with a firearm, stemming from two separate incidents that occurred on the same day in June 2017. Alpert claimed self-defense as to both charges. At a CrR 3.5 hearing in 2018, defense counsel argued statements Alpert made to officers about the incidents after his arrest violated CrR 3.1 because he had invoked his right to counsel. The trial court determined Alpert made an equivocal request for counsel and denied his motion to suppress the statements. At trial, the court denied Alpert's request to provide a jury instruction that he had no duty to retreat in either incident. A jury convicted Alpert as charged.

On appeal, we affirmed Alpert's assault conviction. Alpert, No. 79147-8-I, slip op. at 22. But we remanded for retrial on the murder charge because the trial court erred by (1) refusing to instruct the jury that Alpert had no duty to retreat during his encounter with Baker[2] and (2) admitting evidence tainted by a violation of Alpert's right to counsel under CrR 3.1. Id. at 11, 13. Specifically, we concluded that Alpert "unequivocally invoked his right to counsel" shortly after a detective began to question him at the scene of the shooting because he communicated his intent to terminate the interview and provided the name and

---

[2] The jury instruction is not an issue on discretionary review.

contact information for an attorney:

> Here, Marysville police arrived at the apartment building shortly after Alpert shot Baker. Detective Craig Bartl questioned Alpert while standing "in the street" at the scene. Detective Bartl read Alpert Miranda[3] warnings. Alpert waived his rights, agreed to speak to the detective, and gave Detective Bartl permission "to audio record" their conversation. But after about five minutes of questioning, Alpert announced, "I'm just going to be quiet now, cuz my attorney is named Michael J. Longyear. He's at 801 2nd Avenue. 1415 Norton Building." Detective Bartl asked, "So are you done talking?" Alpert replied, "Yes sir." Detective Bartl again asked Alpert for his name and then terminated the interview because Alpert "invoked his . . . Constitutional Rights." Officers placed Alpert in the back of a patrol car. Detective Bartl did not tell other officers that Alpert had invoked his rights or attempt to put Alpert in contact with an attorney.

Id. at 13, 14-15.

We determined that while a "reasonable officer" would have understood that Alpert was "expressing a desire to speak with that attorney," Detective Bartl and other law enforcement officers "made no effort" to connect Alpert with Longyear or any other attorney.[4] Alpert, No. 79147-8-I, slip op. at 15. As a result, we held that officers violated CrR 3.1(c)(2) by failing to facilitate Alpert's access to counsel "[a]t the earliest opportunity"[5] and that all of his "tainted" statements "must be suppressed." Id. at 13-15. We identified Alpert's tainted

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Officers first drove Alpert to the Marysville Municipal Jail to begin booking procedures. But because a K-9 officer bit Alpert during his arrest, they took him to the hospital to evaluate his injuries. After the evaluation, officers returned Alpert to the Marysville jail and placed him "on suicide watch." They then booked him into the Snohomish County Jail early the next morning, where they finally gave him access to a phone. Alpert continued to speak with officers the entire time.

[5] CrR 3.1(c)(2) provides:
At the earliest opportunity a person in custody who desires a lawyer shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning a lawyer, and any other means necessary to place the person in communication with a lawyer.

statements related to the second degree assault charge and concluded the error as to that charge was harmless. And we directed the trial court to identify and suppress for retrial "the statements related to Alpert's murder charge" that were tainted by the violation of his right to counsel. Id. at 16.

But on remand, in 2021, the trial court held another suppression hearing and viewed its task as determining "when did the violation occur, and whether the defendant's unsolicited or volunteered statements are a waiver." And although police officers testified at the initial 2018 suppression hearing about their actions after Alpert asked to speak with counsel, the trial court allowed the State to present additional testimony to support its position that the "earliest opportunity to provide [Alpert] access to a telephone occurred once he was cleared by emergency services and booked into the Snohomish County Jail."[6]

Based on the evidence presented at the 2021 suppression hearing, the trial court concluded that all of Alpert's statements at the scene of the shooting were admissible because there was an "ongoing investigation" and it was "reasonable" to withhold access to a telephone or other means to communicate with a lawyer. The court likewise concluded that Alpert's statements on the way to and at the Marysville jail were admissible because he was "actively being booked and transported to the hospital." The court then deemed Alpert's statements at the hospital admissible after finding that the Marysville jail has a "reasonable policy" that requires medical clearance before booking a suspect after contact with a police dog during the arrest process. The court further

---

[6] The court also admitted new evidence about the Marysville jail's policy on K-9 officer bites.

4

determined that Alpert's statements after he was medically cleared and booked at the Marysville jail were admissible because custody officers placed Alpert on suicide watch and put him in a restraint chair, and providing a telephone to an inmate in those circumstances posed safety risks. Finally, the court concluded that Alpert's right to counsel "accrued" many hours after his arrest when jail personnel removed him from the restraint chair.[7] The court did not identify any statements to suppress but noted that "the State stipulates all statements made after being released from the restraint chair . . . are inadmissible."[8]

Alpert now seeks discretionary review of the trial court's order following the 2021 suppression hearing.[9]

## ANALYSIS

Alpert contends the court failed to comply with the mandate in the prior appeal to suppress all statements he made after invoking his right to counsel and, instead, held another suppression hearing to determine when and whether a CrR 3.1 violation occurred. He argues that the trial court "departed from the usual course of judicial proceedings," warranting discretionary review under RAP 2.3(b)(3).[10] The State argues that our holding (1) did not require suppression of

---

[7] The record shows that Alpert invoked his right to counsel at 6:11 p.m. on the date of his arrest, June 11, 2017, and custody officers removed him from the restraint chair sometime after 10:25 p.m., more than four hours later.

[8] Presumably, the court was referring to the time between releasing Alpert from the restraint chair at the Marysville jail and booking him at the Snohomish County Jail, where they eventually provided access to a phone.

[9] Alpert also moved to recall the mandate in the first appeal, raising the same grounds on which he seeks discretionary review. We denied the motion. A commissioner of this court referred Alpert's motion for discretionary review to this panel for consideration. See RAP 17.2(b).

[10] RAP 2.3(b)(3) allows discretionary review when "[t]he superior court has so far departed from the accepted and usual course of judicial proceedings . . . as to call for review by the appellate court."

all statements Alpert made after he requested counsel and (2) "left open the possibility that statements were not tainted for other reasons." The State maintains that the proceedings on remand aligned with our decision and instructions on appeal. We agree with Alpert.

The appellate court's mandate determines the scope of remand, which governs the proceedings in the trial court on remand. State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009); State v. Schwab, 134 Wn. App. 635, 644, 141 P.3d 658 (2006), aff'd, 163 Wn2d 664, 185 P.3d 1151 (2008); see also RAP 12.2 ("Upon issuance of the mandate of the appellate court . . . , the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action in any court."). "[T]he trial court cannot ignore the appellate court's specific holdings and directions on remand." Bank of America, N.A. v. Owens, 177 Wn. App. 181, 189, 311 P.3d 594 (2013). This is the principle behind the law of the case doctrine. Owens, 177 Wn. App. at 181.

The law of the case doctrine defines " 'the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand.' " Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (quoting 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 55 (4th ed. 1986)). In other words, when a prior appeal determines an issue of law, the law of the case doctrine ordinarily precludes revisiting the same legal issue. State v. Worl, 129 Wn.2d 416, 425, 918 P.2d 905 (1996); Sambasivan v. Kadlec Med. Ctr., 184 Wn. App. 567, 576, 338 P.3d 860

6

(2014).  In all of its iterations, the law of the case promotes finality and efficiency. Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005) (citing 5 AM. JUR. 2D APPELLATE REVIEW § 605 (1995)).  Courts apply the doctrine to " 'avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.' " State v. Harrison, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (quoting 5 AM. JUR. 2D APPELLATE REVIEW § 605).

Here, we ruled as a matter of law that the State violated Alpert's rights under CrR 3.1 and that the trial court erred when it admitted statements tainted by the violation.  We identified as tainted several statements Alpert made at the hospital that related to the second degree assault charge.  But we remanded for the court to "identify and suppress" for retrial those statements "related to Alpert's murder charge" that were tainted by the violation of his CrR 3.1 right to counsel. Alpert, No. 79147-8-I, slip op. at 16.  Indeed, Alpert made most of the statements admitted at trial in the hours following his arrest—at the scene of the shooting, on the way to the Marysville jail, at the Marysville jail, and at the hospital.  We did not remand for the court to reconsider "when did the violation occur, and whether the defendant's unsolicited or volunteered statements are a waiver."  Contrary to our mandate, the trial court on remand re-evaluated whether a violation occurred, then again ruled in error that Alpert's custodial statements admitted in the first trial were admissible and that no CrR 3.1 violation occurred.  Ultimately, the trial

7

court's ruling on remand does not suppress any statements presented in the first trial.

The State suggests that applying the law of the case doctrine would "work a manifest injustice to the [S]tate" because it did not have a chance to argue that officers gave Alpert access to an attorney at the earliest opportunity at the 2018 CrR 3.5 hearing. Rather, the State focused its argument on whether Alpert made an unequivocal request to speak to an attorney. But it was clear at the outset of the 2018 suppression hearing that Alpert alleged a CrR 3.1 violation. The State chose the witnesses to call in response to the motion and, as a matter of strategy, focused its argument on whether Alpert unequivocally requested to speak with an attorney. All witnesses had the opportunity to testify fully about the issue and some did testify about their opportunities to connect Alpert with an attorney following his arrest. The State had ample opportunity to address all aspects of Alpert's CrR 3.1 challenge at the initial suppression hearing.

While Washington strongly disfavors interlocutory review, it is available in "rare instances" when, as here, "the alleged error is reasonably certain and its impact on the trial manifest." Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010). And while our courts infrequently invoke RAP 2.3(b)(3) as a basis for review, it applies here where circumstances call for the " 'exercise of revisory' " authority, even absent "senseless or inappropriate" conduct by the trial judge. See Geoffrey Crooks, Discretionary Review of Trial Court Decisions under the Washington Rules of Appellate Procedure, 61 Wash. L. Rev. 1541, 1548 (1986) (quoting RAP 2.3 cmt. b). Here,

the trial court lacked authority on remand to revisit our determination that officers violated CrR 3.1 when Alpert invoked the right to counsel and no one facilitated his request.  See Wahler v. Dep't of Soc. & Health Servs., 20 Wn. App. 571, 575-76, 582 P.2d 534 (1978) (concluding that reviewing court departed from "the accepted and usual course of judicial proceedings" by reviewing issues not actually decided by the administrative agency).

We recognize that the trial court worked diligently on this matter and did not intentionally disregard our binding decision.  Nevertheless, the court misperceived the scope of our remand, and in doing so, so far departed from the accepted and usual course of judicial proceedings that it calls for appellate review.[11]  We grant Alpert's motion for discretionary review.  Our court administrator/clerk will set a perfection schedule.

Brennan, J.

WE CONCUR:

Smith, A.C.J.

Verellen, J.

___

[11] RAP 2.3(b)(3).  Because we grant discretionary review on this basis, we need not reach Alpert's arguments in support of review under RAP 2.3(b)(1) (obvious error) and (2) (probable error).

9